SYMON J. TRIETEL, Plaintiff, *v.* ADDISON H. GIBSON, Defendant.

Supreme Court, New York County, January 26, 1928

**Bills and notes — accommodation maker — defense of release of accommodation payee — partner of accommodation payee took over assets of firm including note, and assumed liabilities and both executed general releases — release did not amount to absolute and unconditional renunciation of holder's rights against "principal debtor" under Negotiable Instruments Law, § 203 — principal debtor is maker of note and release did not run to him — defendant maker is liable.**

The defendant executed the note in suit as an accommodation to a member of a partnership. The note was discounted by a bank which held obligations against the firm. Later a copartner took over all the assets of the firm and assumed and paid all its obligations to the bank and received from the bank collateral held by it, including the note in suit. The partnership was dissolved and the accommodation payee and his partner executed general releases.

The defense that the partner by executing the release discharged the instrument by an absolute and unconditional renunciation of his rights against the "principal debtor," within the meaning of section 203 of the Negotiable Instruments Law, cannot be sustained. In the first place the partner was not aware of the accommodation character of the instrument, and in the second place, if he had been, the release would not have operated to discharge the defendant, for the defendant is the principal debtor and the release did not run to him but to the accommodation payee. The "principal debtor" is the party appearing as such on the face of the instrument.

ACTION on a note against the accommodation maker thereof.

*Henry Woog*, for the plaintiff.

*Sullivan & Cromwell* [*E. H. Sykes* of counsel], for the defendant.

MULLAN, J. The defendant, an accommodation maker of the note in suit, seeks to escape liability by availing of the defense that the instrument was discharged by "an absolute and unconditional renunciation of his [the holder's] rights against the principal debtor." (Neg. Inst. Law, § 203.) I am satisfied, and so find, that the defendant made the original note, of which the note in suit was a renewal, for the payee Guffey's individual accommodation; that Guffey, without notice to it of the accommodation character of the instrument, procured the Union Bank of Pittsburgh to discount the

original note; that Guffey deposited the money so procured in his own bank to the credit of his individual account; that Guffey used the money so procured on the original note (1) by crediting to himself an unidentified part as payment of a debt due to him individually by his firm of Guffey & Gillespie, and (2) by paying out the balance in meeting obligations of that firm; that Gillespie at no material time had notice either as to the accommodation character of the note or as to the use made by Guffey of the money raised by Guffey on the discount of the note; that after the renewal note had matured, Gillespie entered into an arrangement with the Union Bank by which Gillespie took up all the obligations to the bank, both of the firm and of its individual members, the bank turning over to Gillespie various items of collateral and notes, including the note in suit, and that thereafter Guffey & Gillespie dissolved their partnership and exchanged general releases.

The principal issue of fact arises out of the question whether Gillespie when he settled with Guffey knew that the note in suit was accommodation paper. My finding, as I have said, is that he did not have such knowledge. The note itself was not destroyed or otherwise physically canceled when the Gillespie-Guffey settlement was consummated. Furthermore, when Gillespie executed his release to Guffey, it is unlikely that he had any actual (as distinguished from legally inferable) intention to discharge the maker. It is conceded by defendant's learned counsel that if a finding is justified that Gillespie at the time of his settlement with Guffey had no knowledge of the accommodation quality of the note the defense must fail. I am of the opinion that the defense must fail even if Gillespie did know that the note was made for Guffey's accommodation. It is contended for the defendant that the release executed by Gillespie, who then held the note in suit, was a discharge of the instrument for being a renunciation by him of his rights against Guffey, the argument thus depending upon the claim that Guffey was the " principal debtor " as that term is employed in section 203 of the Negotiable Instruments Law. A similar term is used in numerous sections of the statute either in the stated or apparent sense of " party primarily liable." (§§ 130, 136; § 200, subd. 1; § 201, subd. 5.) Section 202 of the act deals with the rights of a particular party who discharges the instrument, and its second subdivision specifically deals with accommodation paper, and there [i] a party accommodated is described as the " party accommodated." In section 200 (subd. 2) also the party accommodated is referred to as the " party accommodated." It would thus seem that the " principal debtor " of section 203 is the party appearing as such on the face of the instrument. Confirmation of this as the proper

construction appears to be derivable from the last sentence of section 203 itself, reading as follows: "A renunciation must be in writing, unless the instrument is delivered up to the person primarily liable thereon." Section 203 provides for the express renouncement against any party, meaning, obviously, a particular party. It also provides for a discharge of the *instrument,* which, of course, would release everybody. It further provides that " an absolute and unconditional renunciation against the ' principal debtor ' discharges the ' *instrument.*' " If the renunciation is oral the *instrument* itself must be delivered up to the " person primarily liable," who, of course, is the maker (term defined in Neg. Inst. Law, § 3). That delivery would also release everybody. It can hardly be supposed that the draftsmen of this legislation meant that an oral renunciation must, in order to discharge the maker, be accompanied by the delivery up to the maker of the instrument itself, but that the maker may also just as effectively be discharged by the written release of some party other than the maker, without the delivery to the maker of either the release writing or the instrument. As the import and legal effect of the release must be determined according to the law of Pennsylvania, and that law was not pleaded by the defendant, the deficiency was supplied by a stipulation suggested by me. I have referred to the statute by its New York section numbering, and not by the section numbering of its Pennsylvania counterpart.

There are no reported cases, in so far as counsel or myself have been able to discover, either in New York, Pennsylvania or elsewhere, in which the question dealt with here was passed upon. The only case decided before the adoption of the Uniform Statute that directly touches the question that I have found is that of *Harrison* v. *Courtauld* (3 Barn. & Adol. 36), decided in 1832 by the King's Bench. There the situation dealt with was very similar to that here, except that the accommodation party was acceptor instead of maker, and it was held that the acceptor was not discharged by a release to the accommodation drawer. But whatever the law merchant may have been, counsel for defendant seems to rest his defense upon the provisions of section 203. I am of the opinion that the construction he seeks cannot be given, and accordingly under the stipulation I direct a verdict for the plaintiff in the sum of $2,370, which includes interest. Defendant's motion for a direction is denied, and an exception to him is noted. Also an exception to the direction for the plaintiff. Thirty days' stay and sixty days to make case.